UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VU QUOC PHAM, | No. 1:25-cv-1873 DC AC |
| Petitioner, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| WARDEN, et al., | |
| Respondents. | |

Petitioner, an immigration detainee proceeding without counsel, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. For the reasons discussed below, the undersigned recommends that (1) the petition be granted on (a) petitioner's Fifth Amendment due process claim regarding prolonged detention, (b) regulatory and Fifth Amendment due process claims regarding revocation of release, and (c) Fifth Amendment due process claim regarding the government's third-country removal program; (2) petitioner be immediately released from ICE custody; and (3) respondents be enjoined and restrained from (a) re-detaining petitioner absent compliance with statutory, regulatory, and constitutional protections, (b) removing petitioner to a third country unless they comply with constitutional protections, and (c) removing petitioner to any country where he is likely to face imprisonment upon arrival.

////

////

1

I.      Factual and Procedural Background

Petitioner is a citizen and national of Vietnam who was admitted into the United States in 1989. See ECF No. 1 at 2; ECF No. 12 (Deportation Officer Armando Meneses' Declaration ("Meneses' Decl.")) ¶ 6. In 1994, petitioner was convicted of first-degree burglary (§ 459/460(a) of the California Penal Code ("CPC")), robbery (CPC § 211/212.5(a)), and two counts of false imprisonment (CPC § 236/237). ECF No. 12 (Meneses' Decl.) ¶ 7. In 1997, petitioner was served with a Notice to Appear ("NTA") charging him with removability under § 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA"), codified at 8 U.S.C. § 1227(a)(2)(A)(iii). See id. ¶ 8. On September 30, 1998, an immigration judge ordered petitioner removed to Vietnam. Id. ¶ 9. Petitioner did not appeal. Id.

On or around May 21, 1999, petitioner was placed into Immigration and Custom Enforcement ("ICE") custody under 8 U.S.C. § 1231(a)(6). See id. ¶ 10. On June 23, 1999, ICE and Enforcement and Removal Operations ("ERO") requested travel documents for petitioner from the government of Vietnam. Id. ¶ 11. No travel documents were issued. Id. On April 24, 2000, a federal district court ordered petitioner's release from custody because there was no reasonable likelihood that he could be removed in the foreseeable future. Id. ¶ 12. Petitioner was released under an Order of Supervision ("OSUP"). Id.

In 2003, petitioner was convicted of dissuading or attempting to dissuade a witness in violation of CPC § 136.1(c)(1) and sentenced to 25 years to life with possibility of parole. Id. ¶ 13.

On July 14, 2025, petitioner was set to be paroled from prison. Id. ¶ 14. Instead, ERO took petitioner into custody and served him with a Notice of Revocation of Release. Id. ¶ 15. Three months later, on October 9, 2025, petitioner was served with a Notice to Alien of File Custody Review, which informed him that ICE would review his case for consideration of release on OSUP on October 14, 2025. Id. ¶ 17. He was offered an interview but declined. ECF No. 12 ¶ 18; ECF No. 6 at 18. On October 15, 2025, petitioner was served with a Decision to Continue Detention, which informed petitioner that ICE had determined that he will not be released from custody at this time because he had "not demonstrated that, if released, you will not pose a danger

2

to the community, to the safety of other persons, or to property and that you will not pose a risk of flight pending your removal from the United States." Id. ¶ 18; ECF No. 6 at 17-19.

On November 11, 2025, petitioner was served with a Notice to Alien of Interview for Review of Custody Status. ECF No. 12 (Meneses' Decl.) ¶ 19; ECF No. 6 at 22-23. This notice informed petitioner that he was scheduled for an interview on November 20, 2025, to determine whether he may be recommended for release. Id. Petitioner declined the interview. Id.

On December 15, 2025, petitioner filed a pro se petition for writ of habeas corpus under § 2241 and request for injunctive relief, along with a motion to appoint counsel. ECF Nos. 1, 3. The motion to appoint counsel, ECF No. 3, was denied and respondents were ordered to show cause on or before December 23, 2025, why the writ should not be granted. ECF No. 5.

On December 23, 2025, respondents filed an opposition, with a declaration from Meneses, the deportation officer assigned to petitioner's case, and exhibits. ECF No. 6; ECF No. 12 (Meneses Decl.). According to Meneses, "ERO is actively working on obtaining a travel document for Petitioner and has initiated the process to expeditiously remove him . . . ERO completed a travel document request and will submit it to the Government of Vietnam soon." ECF No. 12 (Meneses Decl.) ¶ 20.

Petitioner filed a reply on February 10, 2026. ECF No. 13. Travel documents for petitioner have not been secured. See id.

II.     Petition for Writ of Habeas Corpus

A. Petitioner's Claims

The petition asserts four grounds for relief. First, petitioner alleges that his continued detention violates due process because his post-final removal order detention has extended beyond the presumptively reasonable six-month period and there is no significant likelihood that he will be removed in the reasonably foreseeable future. ECF No. 1 at 13-14. Next, he asserts that ICE's current procedures relating to the removal of persons to third countries, which provide little to no notice or process, violate due process, 8 U.S.C. § 1231, applicable implementing regulations, the Convention Against Torture ("CAT"), and the Administrative Procedures Act ("APA"). Id. at 14-15. Ground Three alleges that the third-country removal program is punitive

and violates the Eighth Amendment and Fifth Amendment due process. Id. at 15-16. Finally, the petition asserts that petitioner's re-detention without notice or a demonstration of changed circumstances regarding the likelihood of removal violates due process, 8 C.F.R. § 241.13, and the APA. Id. at 17-18.

By way of relief, petitioner seeks immediate release on grounds one and four. Id. at 13-14, 17-19. On ground two, petitioner seeks an order enjoining respondents from removing or seeking to remove him to a third country without statutory and constitutional requirements. Id. 14-15, 19. Regarding ground three, petitioner seeks an order enjoining respondents from removing him to a third country under respondents' third-country removal program that would result in punishment. Id. at 15-16, 19. Lastly, petitioner also seeks "all other relief that the Court deems just and proper." Id. at 19.

B. Respondents' Opposition

With respect to ground one, respondents argue petitioner is properly detained under 8 U.S.C. § 1231(a)(6) and petitioner has not provided a good reason to believe there is no likelihood of removal in the reasonably foreseeable future as required by Zadvydas v. Davis, 533 U.S. 678 (2001). ECF No. 6 at 3-4. Respondents further argue that even if petitioner provided a good reason, factual circumstances have changed since petitioner's prior release, warranting revocation. Id. at 4-5. With respect to ground four, respondents argue they have complied with 8 C.F.R. §§ 241.4 and 241.13. Id. at 5. Lastly, in a footnote, respondents argue grounds two and three "are without merit and borderline frivolous." Id.

III.    Legal Standard

The Constitution guarantees the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). The writ of habeas corpus extends to a prisoner who "is in custody in violation of the Constitution or laws or treaties of the United States." 8 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of

4

reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001) (citation omitted), superseded by statute on other grounds, Nasrallah v. Barr, 590 U.S. 573580 (2020). "District courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order[.]" Lopez-Marroquin v. Barr, 955 F.3d 759 (9th Cir. 2020) (citation omitted); see also Zadvydas, 533 U.S. at 688 ("We conclude that § 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention.").

IV.    Discussion

A.  Ground One: Prolonged Detention Violates Fifth Amendment Due Process Clause

The petition alleges that petitioner's continued detention under 8 U.S.C. § 1231(a)(6) violates due process. For the reasons discussed below, the undersigned agrees and recommends the petition be granted and petitioner be released immediately.

i.    Legal Standard

Detention of non-citizens who have been ordered removed from the United States is governed by 8 U.S.C. § 1231(a). The statute provides that when a non-citizen is ordered removed, they shall be removed within ninety days, which is referred to as the "removal period." 8 U.S.C. § 1231(a)(1)(A). During the removal period, the noncitizen shall be detained. 8 U.S.C. § 1231(a)(2). "[Section] § 1231(a)(6) provides that after a 90-day 'removal period,' a noncitizen 'may be detained' or may be released under terms of supervision." Johnson v. Arteaga-Martinez, 596 U.S. 573, 575 (2022). After the 90 day removal period has elapsed, ongoing detention is only authorized for "four categories of people: (1) those who are 'inadmissible' on certain specified grounds; (2) those who are 'removable' on certain specified grounds; (3) those it determines 'to be a risk to the community'; and (4) those it determines to be 'unlikely to comply with the order of removal.'" Id. at 578–79 (quoting 8 U.S.C. § 1231(a)(6)). The second category includes noncitizens ordered removed under 8 U.S.C. § 1227(a)(2). 8 U.S.C. § 1231(a)(6).

In Zadvydas, the Supreme Court held that 8 U.S.C. § 1231(a)(6), "read in light of the Constitution's demands, limits [a noncitizen's] post-removal-period detention to a period

5

reasonably necessary to bring about that alien's removal from the United States. It does not permit indefinite detention." Zadvydas, 533 U.S. at 689. "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." Id. at 699. "[F]or the sake of uniform administration in the federal courts," the Supreme Court recognized a period of six months to be a "presumptively reasonable period of detention." Id. at 701. "After this 6-month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." Id.

### ii.    Analysis

As an initial matter, the parties do not dispute that petitioner is subject to discretionary detention under 8 U.S.C. § 1231(a)(6) based on his order of removal pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii). Instead, the petition alleges that petitioner's continued detention under 8 U.S.C. § 1231(a)(6) violates due process because his detention post final order of removal has extended beyond the presumptively reasonable six-month period *and* his re-detention "for over 4 months, with no travel document in sight" shows there is no significant likelihood that he will be removed in the reasonably foreseeable future. ECF No. 1 at 2, 13-14.

In opposition, respondents argue that petitioner misunderstands the presumptively reasonable six-month period and that Zadvydas does not require petitioner's release once the six-month threshold has been reached. ECF No. 6 at 4. It is respondents who misunderstand petitioner's claim. The petition does not argue that the length of petitioner's detention—by itself—warrants his release. The petition contends that the length of petitioner's detention has exceeded the six-month threshold and is therefore *not presumptively reasonable*.

Respondents do not dispute, nor could they dispute, that petitioner's detention has exceeded the presumptively reasonable six-month period. The record shows petitioner's current detention since July 14, 2025, and cumulative detention,[1] which includes his prior detention from

---

[1] Courts within the Ninth Circuit have found that the period of post-final removal order detention is cumulative. See, e.g., Nguyen v. Scott, 796 F. Supp. 3d 703, 721-22 (W.D. Wash. 2025) (rejecting argument that detention clock restarts with each re-detention and finding detention not (continued)

6

May 21, 1999, to April 24, 2000, exceeds six months. Accordingly, because petitioner's detention is no longer presumptively reasonable, the undersigned must determine whether petitioner "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," and if so, whether respondents' have sufficiently rebutted that showing.

Respondents argue petitioner fails to satisfy his burden under Zadvydas because he has not provided evidence that his removal is not reasonably foreseeable, and that Vietnam has refused to issue him travel documents. ECF No. 6 at 4. Respondents, however, do not cite authority to support their argument that petitioner bears the burden of showing his country of removal has refused to issue travel documents. And more importantly, the record before the court shows good reason to believe there is no significant likelihood of petitioner's removal in the reasonably foreseeable future.

The record shows petitioner was detained for eleven months and released in 2000 because the government was unable to secure petitioner's travel documents from Vietnam. In July 2025, he was re-detained based on a Notice of Revocation stating, "it has been determined that there is a significant likelihood of removal in the reasonably foreseeable future in [his] case." Yet ICE did not request travel documents before re-detaining petitioner, or even five months later when they filed their opposition in this action. Additionally, despite almost eight months since petitioner's re-detention, no travel documents have been secured, and it's unclear whether they have even been requested. Because this is more than enough to establish a good reason to believe

---

presumptively reasonable based on aggregate period of confinement); Jaranow v. Bondi, No. 2:25-cv-2396 TL, 2026 WL 35864, at *3 (W.D. Wash. Jan. 6, 2026) (courts in Ninth Circuit have found "six-month period of detention need not be consecutive to reach the limit established in Zadvydas" (collecting cases)); Shaltapur v. Cantu, No. CV 25-3995 PHX DWL (CDB), 2025 WL 3724470, at *4 n.4 (D. Ariz. Dec. 18, 2025) (district courts within Ninth Circuit aggregate periods of detention) (collecting cases); Asfestani v. Current or Acting Field Off. Director, No. 1:25-cv-1562 SCR, 2025 WL 3677321, at *4 (E.D. Cal. Dec. 18, 2025). "In fact, looking beyond the Ninth Circuit, '[m]ost courts to consider the issue have concluded that the Zadvydas period is cumulative, motivated, in part, by a concern that the federal government could otherwise detain noncitizens indefinitely by continuously releasing and re-detaining them.'" Phan v. Warden of Otay Mesa Det. Facility, No. 25-cv-2369 AJB BLM, 2025 WL 3141205, at *3 (S.D. Cal. Nov. 10, 2025) (alteration in original) (collecting cases).

7

petitioner's removal is not significantly likely in the reasonably foreseeable future, the undersigned finds petitioner has satisfied his initial burden under Zadvydas. The burden shifts to respondents to rebut.

Respondents assert that even if petitioner met his burden, respondents have made the necessary rebuttal showing because ICE has represented petitioner's removal is imminent. ECF No. 6 at 4. In support of their opposition, respondents provide exhibits[2] and a declaration from the deportation officer assigned to petitioner's case. Id. at 6-23. However, neither the exhibits nor the declaration are sufficient to rebut petitioner's showing.

The removal order simply confirms petitioner was ordered removed to Vietnam in 1999. It fails to provide specific facts demonstrating that petitioner's removal twenty-six years later is significantly likely in the reasonably foreseeable future. The Notice of Revocation of Release states in a conclusory manner that ICE has determined petitioner's removal is significantly likely in the reasonably foreseeable future based on changed circumstances, but it is also devoid of a factual basis for this conclusory assertion. Id. at 14. The deportation officer's declaration suffers from similar defects. The declaration states ICE is "actively working" to obtain petitioner's travel documents and has "initiated" the process to expeditiously removal petitioner, and "ERO completed a travel document request and will submit it to the Government of Vietnam *soon*." ECF No. 12 ¶ 20 (emphasis added). The declaration does not state what ICE has done or is doing to obtain petitioner's travel documents, nor what part of the removal process they have "initiated" that makes his removal significantly likely in the reasonably foreseeable future. The declaration includes no information about the processing time for travel document requests to Vietnam, and/or the rate at which such requests are granted under similar circumstances. Moreover, the undersigned finds it disingenuous for respondents to claim petitioner's removal is significantly likely in the reasonably foreseeable future where the declaration shows ICE has not submitted a request for travel documents, even five months after petitioner's re-detention. Lastly, the record

---

[2] It appears respondents are referring to petitioner's order of removal and Notice of Revocation of Release. See ECF No. 6 at 12, 14. Neither the Decision to Continue Detention nor the Notice to Alien of Interview for Review of Custody Status mention anything about petitioner's impending removal. Id. at 17-20, 22-23

shows petitioner has been detained an additional two and a half months since the deportation officer's declaration, and travel documents have not been secured.

### iii.    Conclusion

Because respondents have failed to rebut petitioner's showing, the undersigned finds petitioner's continued prolonged detention violates the Fifth Amendment Due Process Clause of the United States Constitution.  On this ground alone, the court can and should grant the petition and order petitioner's immediate release.  Nonetheless, the undersigned now turns to petitioner's claims concerning constitutional and regulatory violations in the revocation of his previous release as alternative bases for relief.

### B.  Ground Four: Petitioner's Revocation of Release Violates 8 C.F.R. § 241.13

The petition alleges that respondents violated 8 C.F.R. §§ 241.13(i)(2) and (3) when they revoked petitioner's release and re-detained him on July 14, 2025.  For the reasons discussed below, the undersigned agrees, finds this is an alternative basis for relief, and recommends the petition be granted and petitioner be released immediately.

### i.    Legal Standard

DHS and ICE, like all other agencies, are required to follow their own regulations. Rombot v. Souza, 296 F. Supp. 3d 383, 388 (D. Mass. 2017) ("ICE, like any agency, 'has the duty to follow its own regulations.'" (quoting Haoud v. Ashcroft, 350 F.3d 201, 205 (1st Cir. 2003))); United States v. Ramos, 623 F.3d 672, 683 (9th Cir. 2010) ("It is a well-known maxim that agencies must comply with their own regulations." (citation omitted)); Fed. Defs. of New York, Inc. v. Fed. Bureau of Prisons, 954 F.3d 118, 130 (2d Cir. 2020) ("[U]nder deeply rooted principles of administrative law, not to mention common sense, government agencies are generally required to follow their own regulations."); United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 265–68 (1954) (reversing dismissal of habeas petition in which the petitioner alleged that the Board of Immigration Appeals had failed to follow its own regulations).

Section 241.13 of Title 8 was added to the Code of Federal Regulations after the decision in Zadvydas to incorporate the constitutional limitations on detention of noncitizens after the expiration of the 90-day removal period under 8 U.S.C. § 1231(a).  See Continued Detention of

Aliens Subject to Final Orders of Removal, 66 Fed. Reg. 56967, 56967-70 (Interim Rule Nov. 14, 2001) ("In light of the Supreme Court's decision in Zadvydas, this rule revises the Department's regulations by adding a new 8 CFR 241.13, governing certain aspects of the custody determination of a detained [noncitizen] after the expiration of the removal period."); see also Zadvydas, 533 U.S. at 690 690 ("The Fifth Amendment's Due Process Clause forbids the Government to 'depriv[e]' any "person . . . of . . . liberty . . . without due process of law.' Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects."), 699-700 ("if removal is not reasonably foreseeable the court should hold continued detention unreasonable and no longer authorized by statute.  In that case, of course, the [noncitizen's] release may and should be conditions on any of the various forms of supervised release that are appropriate in the circumstances, and the [noncitizen] may no doubt be returned to custody upon a violation of those conditions.").

Failure to adhere to "a regulation [that] is promulgated to protect a fundamental right derived from the Constitution or a federal statute, invalidates the challenged action.  See Rombot, 296 F. Supp. 3d at 388 ("[W]here an immigration 'regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute . . . and [ICE] fails to adhere to it, the challenged [action] is invalid.'" (quoting Waldron v. I.N.S., 17 F.3d 511, 518 (2d Cir. 1993)); see also Truong v. Noem, No. 25-cv-2597 JES MMP, 2025 WL 2988357, at *6 (S.D. Cal. Oct. 22, 2025) ("Courts have found that when ICE fails to follow its own regulations in revoking release, the detention is unlawful, and the petitioner's release must be ordered.") (collecting cases).

ii.   Relevant Regulatory Provisions

1.   Release of Noncitizen with Final Removal Order

"Noncitizens subject to a final removal order may be released pursuant to 8 C.F.R. § 241.4 or 8 C.F.R. § 241.13." Vishal v. Chestnut, No. 1:25-cv-1469 SAB HC, ___ F. Supp. 3d ____, 2025 WL 2511815, at *4 (E.D. Cal. Dec. 8, 2025) (citing Ceesay v. Kurzdorfer, 781 F. Supp. 3d 137, 159, n.22 (W.D.N.Y. 2025)); Constantinovici v. Bondi, 806 F. Supp. 3d 1155, 1162 (S.D.

Cal. 2025) (the government promulgated 8 C.F.R. § 241.4 and 8 C.F.R. § 241.13 governing the release of noncitizens with final orders of removal). The same regulations govern the revocation of said release. Vishal, 2025 WL 2511815, at *4; Constantinovici, 806 F. Supp. 3d at 1162.

A noncitizen may be released under 8 C.F.R. § 241.4 "if [the Service] determines that the [noncitizen] would not pose a danger to the public or a risk of flight, *without regard to the likelihood of the alien's removal in the reasonably foreseeable future.*" 8 C.F.R. § 241.13(b)(1) (explaining the relationship between 8 C.F.R. §§ 241.4 and 241.13) (emphasis added); see also 8 C.F.R. § 241.4(f) (release factors consider petitioner's disciplinary infractions while in ICE custody, petitioner's criminal conduct and convictions, "psychiatric and psychological reports," rehabilitation, ties to the United States, "prior immigration violations and history," flight risk, and petitioner's likelihood to engage in positive and negative behavior in the community). In contrast, a noncitizen may be released under § 241.13 if it is determined that there is no significant likelihood of the noncitizen's removal in the reasonably foreseeable future. 8 C.F.R. § 241.13(f) (release factors consider past and ongoing efforts to remove the noncitizen from the United States, "reasonably foreseeable results of those efforts," "the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question, and the noncitizen's history of compliance with the removal order and assistance with removal efforts).

## 2. Revocation of Release under 8 C.F.R. § 241.13

Under 8 C.F.R. § 241.13, release can be revoked only (1) when the noncitizen violates a condition of release or (2) when "on account of changed circumstances" it is determined "that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(1)-(2). Revocation procedures are delineated in 8 C.F.R. § 241.13(i)(3).

/////

/////

/////

/////

/////

11

a.  Requirements under 8 C.F.R. § 241.13(i)(2)[3]

Under 8 C.F.R. § 241.13(i)(2), "[t]he Service may revoke [a noncitizen's] release . . . and return the [noncitizen] to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future."  8 C.F.R. § 241.13(i)(2).  Accordingly, § 241.13(i)(2) has four requirements: "(1) an individualized determination (2) by ICE that, (3) based on changed circumstances, (4) removal has become significantly likely in the reasonably foreseeable future."  Kong v. United States, 62 F.4th 608, 619-20 (1st Cir. 2023); see also Choy v. Woosely, No. 4:25-cv-197 DJH, 2026 WL 324601, at *4 (W.D. Ky. Feb. 6, 2026); Nguyen v. Hyde, 788 F. Supp. 3d 144, 150 (D. Mass. 2025) (quoting Kong, 62 F.4th 608); Espada v. Doe, No. 5:25-cv-2983 JWH KES, 2026 WL 181539, at *4 (C.D. Cal. Jan. 20, 2026).

Unlike the burden-shifting framework applicable to prolonged detention claims under Zadvydas, discussed above, under 8 C.F.R. § 241.13(i)(2) it is ICE's burden to establish that revocation of release is warranted.  Nguyen v. Hyde, 788 F. Supp. 3d at 149 (finding 8 C.F.R. § 241.13(i), not Zadvydas, applies to non-citizens who were re-detained "after [they] were issued a final order of removal, detained and subsequently released on an [order of supervised release]"); Roble v. Bondi, 803 F. Supp. 3d 766, 772 (D. Minn. 2025) (finding the burden under § 241.13(i)(2) for revocation of release is "on ICE to first establish changed circumstances that make removal significantly likely in the reasonably foreseeable future"); Yan-Ling X. v. Lyons, No. 1:25-cv-1412 KES CDB, ___ F. Supp. ____, 2025 WL 3123793, at *3 (E.D. Cal. Nov. 7, 2025) (finding Zadvydas burden-shifting framework does not apply to revocation of release and that respondents failed to meet their burden under § 241.13(i)(2)); Nguyen v. Albarran, No. 1:25-cv-1926 CSK, 2026 WL 184513, at *4 (E.D. Cal. Jan. 23, 2026) (finding Zadvydas burden-shifting framework is inapplicable because "this is not your typical first round detainment of an [noncitizen] awaiting removal.  Petitioner was previously detained, then released on supervised

---

[3]  Because, as discussed below, the undersigned finds respondents' invoked 8 C.F.R. § 241.13(i)(2), not (i)(1), to revoke petitioner's release, the undersigned does not include the requirements for revocation of release under § 241.13(i)(1).

12

release for several years, and his 90-day removal period expired." (quoting Escalante v. Noem, No. 9:25-CV-00182 MJT, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025))); Espada v. Doe, No. 5:25-cv-02983 JWH KES, 2026 WL 181539, at *5 (C.D. Cal. Jan. 20, 2026) (same); Nguyen v. Lyons, No. 25-cv-631 MSM PAS, 2026 WL 125093, at *2-3 (D.R.I. Jan. 16, 2026) (finding Zadvydas burden shifting standard inapplicable, in part, because "[t]his case is not about the ability to detain in the first instance, as was the case in Zadvydas, but the ability to 're-detain' [petitioner] after he was issued a final order of removal, detained, and subsequently released"); Escalante, 2025 WL 2206113, at *3 (finding Zadvydas burden-shifting framework does not apply to revocation of release; upon revocation of release, "it is [ICE's] burden to show a significant likelihood that the [noncitizen] may be removed").

b.   Requirements under 8 C.F.R. § 241.13(i)(3)

Section 241.13(i)(3) states that "[u]pon revocation, the [noncitizen] will be notified of the reasons for revocation of his or her release.  The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification."  8 C.F.R. § 241.13(i)(3).  Accordingly, revocation of release pursuant to 8 C.F.R. § 241.13(i), requires the following three procedures: (1) a notice of the "reasons for revocation," (2) a "prompt" initial informal interview after re-detention, and (3) an opportunity to respond to the reasons stated for revocation.  See Nguyen v. Warden of Golden State Mcfarland Det. Facility, No. 2:25-cv-3297 SKO (HC), 2026 WL 72110, at *3 (E.D. Cal. Jan. 9, 2026) ("In addition to the [1] notice provision, section 241.13(i)(3) requires ICE to [2] 'promptly,' after re-detainment, conduct 'an initial informal interview' to [3] 'afford the [noncitizen] an opportunity to respond to the reasons for revocation.'"); Hakim v. Noem, No. 5:26-cv-0145-CV (DTBx), 2026 WL 252493, at *3, n. 1 (C.D. Cal. Jan. 22, 2026) ("[W]hen ICE revokes an OSUP, the regulations require ICE to provide (1) notice of the reasons for revocation, and (2) an 'informal interview . . . to afford the alien an opportunity to respond to the reasons for revocation stated in the notification.') (alterations in original) (citation omitted).

/////

/////

13

iii.    Analysis

1.    Petitioner's Release and Revocation of Release under 8 C.F.R. § 241.13

The record shows that petitioner was "release[d] from custody due to no reasonably foreseeable likelihood that [he] could be removed in the foreseeable future."  ECF No. 12 ¶ 12. This necessarily means that he was released pursuant to 8 C.F.R. § 241.13, and the revocation of his release was therefore governed by § 241.13(i).

Respondents argue that revocation of petitioner's release was authorized under § 241.13(i)(1) because his new conviction post-ICE release constituted a violation of the conditions of his release under 8 U.S.C. § 1231(a)(3)(D), and under § 241.13(i)(2) based on changed circumstances making his removal significantly likely in the reasonably foreseeable future.  See ECF No. 6 at 4-5; 8 U.S.C. § 1231(a)(3)(D) (the Attorney General must prescribe regulations that include provisions requiring a noncitizen "to obey reasonably written restrictions on the [noncitizen's] conduct or activities that the Attorney General prescribes for the [noncitizen]").  This case, however, is analogous to Thanh v. Warden, No. 1:26-cv-0352 DC CSK, 2026 WL 494581, at *4 (E.D. Cal. February 23, 2026), in which the court rejected a new argument that petitioner's release was revoked under § 241.13(i)(1).

In Thanh, respondents raised for the first time in their answer that petitioner's release was revoked after petitioner committed new crimes in violation of the conditions of his release. Thanh, 2026 WL 494581, at *4.  There, the court found that "based on the government's own revocation notice," which "expressly states petitioner's order of supervision was revoked based on changed circumstances," ICE did not revoke petitioner's release based on violations of the conditions of his release.  Id.  Similarly, in this case, petitioner's Notice of Revocation of Release shows that ICE revoked release pursuant to § 241.13(i)(2), not § 241.13(i)(1).  See ECF No. 6 at 14.  Petitioner's notice uses the language of § 241.13(i)(2)—"changed circumstances" and "significant likelihood of removal in the reasonably foreseeable future"—and states in a conclusory fashion that revocation is warranted on that basis.  Id.  The notice does not mention or

/////

14

identify petitioner's new conviction and/or any other putative violation of the conditions of his release as the basis for the revocation.  Id.

The undersigned therefore finds § 241.13(i)(2), and only that section, was the basis for revocation of petitioner's release on July 14, 2025.  Accordingly, the question becomes whether respondents complied with the requirements of § 241.13(i)(2) and § 241.13(i)(3).

2.   Respondents Violated 8 C.F.R. § 241.13(i)(2)

a.   Overview

Petitioner contends that respondents violated § 241.13(i)(2) because "the government failed to produce 'any documented determination, made prior to Petitioner's arrest, that his release should be revoked." ECF No. 1 at 17.  The undersigned construes petitioner's argument as raising two distinct issues.  First, allegedly ICE failed to make the required pre-detention determination that changed circumstances made petitioner's removal significantly likely in the reasonably foreseeable future.   Second, ICE allegedly failed to meet its burden to show (i.e. demonstrate the factual basis for any determination) that petitioner's removal became significantly likely in the reasonably foreseeable future due to changed circumstances.

In opposition respondents say that petitioner has not shown a violation of any regulation, but they do not elaborate.  ECF No. 6 at 5.  For the reasons discussed below, the undersigned finds that respondents violated § 241.13(i)(2) by (1) failing to make the requisite determination and (2) failing to meet their burden.

b.   Respondent's Failed to Make the Requisite Determination Based on Changed Circumstances

The record before the court—specifically, petitioner's Notice of Revocation of Release, respondents' assertions in their opposition to the petition, and the deportation officer's declaration in support of respondents' opposition—shows that ICE failed to make an individualized determination regarding the significant likelihood of petitioner's removal based on changed circumstances as required by § 241.13(i)(2).  First, the Notice of Revocation of Release states,

/////

15

> This letter is to inform you that your case has been reviewed and it has been determined that you will be kept in [ICE custody] at this time. This decision has been made based on a review of your file and/or your personal interview on account of changed circumstances in your case. ICE has determined that there is a significant likelihood of removal in the reasonably foreseeable future in your case.
>
> Based on the above, and pursuant to 8 C.F.R. § 241.13, you are to remain in ICE custody at this time.

ECF No. 6 at 14.  The notice is vague and conclusory because it does not provide any information regarding the changed circumstances and how the changed circumstances made petitioner's removal significantly likely in the reasonably foreseeable future.  The notice also fails to reference and/or address any of the relevant factors under 8 C.F.R. § 241.13(f), which include, among other things, an examination of past and ongoing efforts to remove petitioner to a specific country, the "reasonably foreseeable results of those efforts," and the Department of States view "regarding the prospect for removal" of petitioner to the specific country.  See 8 C.F.R. § 241.13(f) (listing factors for consideration under 8 C.F.R. § 241.13).

Second, in their opposition to the petition and supporting evidence, respondents make conclusory assertions unsupported by any specific evidence of an actual determination under § 241.13(i)(2).  The opposition states that petitioner was previously "released because the likelihood of his removal was no longer foreseeable because Vietnam would not issue travel documents.  But that is not the case in this instance.  ICE has represented that his removal is imminent and that ERO is expediting procurement of his travel documents."  ECF No. 6 at 4.  Respondents' reliance on a conclusory assertion of imminent removal is unpersuasive.  The deportation officer's declaration states "ERO is actively working on obtaining a travel document for Petitioner and has initiated the process to expeditiously remove him from the United States . . . ERO completed a travel document request and will submit it to the Government of Vietnam soon."  ECF No. 12 ¶ 20.  Like the Notice of Revocation of Release, neither the opposition nor the supporting declaration give any indication *what* circumstances have changed and/or reference any of the relevant factors under § 241.13(f).

/////

16

The record is clear that respondents made a decision to revoke petitioner's release and to recite the language of § 241.13(i)(2) in doing so, but that does not mean that a determination of changed circumstances specific to the feasibility of petitioner's removal was actually made as the predicate for the revocation decision. A decision to revoke is not the "determination" required by § 241.13(i)(2) when it is made without reference to the § 241.13(f) factors and lacks any other indication that the predicate facts had been found to exist. Section § 241.13(i)(2) requires a pre-arrest, individualized determination "on account of changed circumstances" that removal is reasonably foreseeable. A decision to revoke that lacks a supporting factual basis, perhaps in hopes that such a basis will be identified post-hoc, violates the regulatory scheme.

c.    Respondents Failed to Satisfy Their Burden

Even if respondents made a "determination" within the meaning of § 241.13(i)(2), the record shows respondents have not satisfied their burden under § 241.13(i)(2) for at least two reasons. First, as noted above, respondents did not identify the changed circumstances and explain how the changed circumstances made petitioner's removal significantly likely in the reasonably foreseeable future. Second, to the extent respondents claim the request for petitioner's travel documents constitute changed circumstances justifying revocation of release, they are mistaken. The undersigned expands on each point below.

This case is analogous to Hoac v. Becerra, No. 2:25-cv-1740 DC JDP, 2025 WL 1993771 (E.D. Cal. July 16, 2025) and Yan-Ling X, supra. In both cases, the courts found respondents had not met their burden under § 241.13(i)(2) because they failed to provide details concerning the changed circumstances and an explanation of how the changed circumstances made the noncitizen's removal significantly likely in the reasonably foreseeable future. Hoac, 2025 WL 1993771, at *4-5; Yang-Ling X, 2025 WL 3123793, at *4.

In Hoac, the court ordered petitioner's immediate release after finding petitioner had shown a likelihood of success on his claim that respondents violated 8 C.F.R. § 241.13(i)(2) because respondents could not demonstrate changed circumstances made his removal significantly likely in the reasonably foreseeable future. Hoac, 2025 WL 1993771, at *4. In doing so, the court explained that "Respondents have not provided any details about why a travel

17

document could not be obtained in the past, nor have they attempted to show why obtaining a travel document is more likely this time around." Id.  The court also found respondents failed to carry their burden because "Respondents' intent to eventually complete a travel document request for Petitioner does not constitute a changed circumstance," and a 2020 Memorandum of Understanding between the United States and Vietnam, establishing a process of review and issuance of travel documents, and a single example of a recent removal to Vietnam, do not on their own establish changed circumstances.  Id. at *4-5 (citations omitted).

Similarly, in Yang-Li X, the court found respondents failed to satisfy the requirements under § 241.13(i)(2) because

> Respondents fail to explain why [the country of removal] did not issue a travel document in the past or why [the country of removal] is likely to issue a travel document for petitioner in the reasonably foreseeable future.  Respondents do not explain whether the United States and [the country of removal] have a repatriation agreement in place, do not explain whether removals to [the country of removal] are common, do not identify what considerations the Government of [the country of removal] might take into account when deciding whether to issue a travel document, and do not explain whether the Government of [the country of removal] will look favorably upon petitioner's case.

2025 WL 3123793, at *4 (internal citations omitted).  The court explained that

> "significant likelihood" requires something more than a mere possibility that removal will occur. Evidence that "there is at least some possibility that" the designated country of removal "will accept Petitioner at some point . . . is not the same as a significant likelihood that [she] will be accepted in the reasonably foreseeable future."

Id. (quoting Nguyen v. Scott, 796 F. Supp. 3d 703, 725 (W.D. Wash. 2025)).

Because respondents in this case provide even less information than in Hoac and Yang-Li, the undersigned finds respondents have not met their burden under § 241.13(i)(2).  See also Munagi v. McDonald, No. 25-CV-3064 JLS (MMP), ___ F. Supp. 3d ____, 2025 WL 3688023, at *2 (D. Mass. Dec. 19, 2025) ("[E]mpty statement by the declaring officer that 'there is a significant likelihood of his removal in the reasonably foreseeable future' is insufficient to satisfy Respondents' burden.").

/////

18

Moreover, to the extent respondents argue that their new efforts to procure travel documents for petitioner constitute changed circumstances, the undersigned rejects this contention. "Changed circumstances that make [a noncitizen's] removal likely in the foreseeable future must have existed at or before the OSUP revocation; post-hoc justification are inadequate." Munagi, 2025 WL 3688023, at *2 ("The question before the Court is not whether petitioner's deportation is now likely in the reasonably foreseeable future but whether such likelihood existed at the time his [supervised release] was revoked."). Travel document requested and/or received after the revocation of release are not changed circumstances that can justify revocation under § 241.13(i)(2) because they did not exist or occur at or before the time of revocation. Id.; Duong v. Charles, No. 1:25-cv-1375 SKO, 2025 WL 3187313, at *3 (E.D. Cal. Nov. 14, 2025); Sarail A. v. Bondi, 803 F. Supp. 3d 775, 788 (D. Minn. 2025); Sphabmixay v. Noem, No. 25CV2648 LL VET, 2025 WL 3034071, at *2 (S.D. Cal. Oct. 30, 2025). When travel documents are requested after revocation of release, courts have granted the petition for writ of habeas corpus and ordered petitioner's immediate release, even if travel documents were subsequently secured. See e.g., Munagi, 2025 WL 3688023, at *2 (granting petitioner's release, despite the fact that the government had obtained travel documents for petitioner's return to Kenya, because the travel documents were not requested until *after* petitioner's release had been revoked); Duong, 2025 WL 3187313, at *3, *5-6 (granting petitioner's writ and ordering his immediate release, despite the fact that the government had obtained travel documents for petitioner's return to Vietnam, because the travel documents were not requested until almost one month *after* petitioner's release had been revoked); Sarail A., 803 F. Supp. 3d at 788-89 (recommending petitioner's writ of habeas corpus be granted and petitioner released after concluding that respondents violated § 241.13(i)(2) because, among other things, a request for travel documents several weeks after petitioner's release was revoked "could not have constituted the supposedly changed circumstances underlying the Notice"); Sphabmixay, 2025 WL 3034071, at *2 (granting petitioner's writ and ordering his immediate release after concluding respondents violated § 241.13(i)(2) because they failed to establish changed circumstances based on a request for travel documents submitted a week after petitioner had been detained).

19

Here, ICE took custody of petitioner on July 14, 2025, ECF No. 12 ¶¶14-15, but as of December 23, 2025, ICE had not submitted a travel document request to Vietnam.  ECF No. 12 ¶ 20 (ERO "will submit" the travel document request "to the Government of Vietnam soon").  Assuming a travel document request has been submitted, the request cannot constitute the changed circumstances justifying the revocation of petitioner's release because it was submitted *after* petitioner's re-detention.  Accordingly, the undersigned finds respondents have not met their burden.

### 3.   Respondents' Violated 8 C.F.R. § 241.13(i)(3)

#### a.   Overview

The petition alleges that respondents violated 8 C.F.R. § 241.13(a)(3) by failing to notify petitioner of the reasons for revocation of his release and failing to provide petitioner with a prompt interview after return to custody to afford him an opportunity to respond to the reasons stated in the notification.  ECF No. 1 at 17-18.  In opposition, respondents argue that petitioner's case is distinguishable from other cases concerning violations of § 241.13 "because Petitioner received notices of his pending re-detention and custody re-evaluation and decline to participate in either, despite being given the opportunity."  ECF No. 6 at 5.  For the reasons discussed below, the undersigned finds that respondents misunderstand the requirements under § 241.13(i)(3), misrepresent the evidence, and most importantly failed to afford petitioner the procedures required under § 241.13(i)(3).

#### b.   Insufficient Notice of Reasons for Revocation

To comply with the notice requirement under § 241.13(i)(3), a notification of revocation of release must provide the "reasons for revocation," 8 C.F.R. § 241.13(i)(3), which include *what* circumstances have changed and *why* petitioner's removal was not previously but is now significantly likely in the reasonably foreseeable future.  Sarail A. v. Bondi, 803 F. Supp. 3d 775, 780 (D. Minn. 2025); Saqib v. Andrews, No. 1:25-cv-2035 DC CSK, 2026 WL 350830, at *5 (E.D. Cal. Feb. 9, 2026); see also Roble, 803 F. Supp. 3d at 772 (the notification requirement requires the government provide the "reasons" for revocation).  A notice that provides nothing more than conclusory statements reciting back to the regulation's requirements is not adequate

20

notice of the reasons for petitioner's revocation.  Sarail A., 803 F. Supp. 3d at 780 (notice merely citing changed circumstances without any explanation is insufficient under § 241.13(i)(3)); Roble, 803 F. Supp. 3d at 772 ("[p]roviding a notice that simply recites the language of the regulation does not satisfy the Government's obligation to provide the "reasons" why [a noncitizen's] Order of Supervision was revoked").  "[F]ailure to notify petitioner of the reasons for revocation beyond 'changed circumstances' . . . violates 8 C.F.R. § 241.13(i)(3)."  Saqib, 2026 WL 350830, at *5; see also Sarail A., 803 F. Supp. 3d at 780 (finding violation of § 241.13(i)(3) based on inadequate notice).

Here, petitioner's Notice of Revocation of Release suffers from the same flaws as in Sarail A., Roble, and Saqib.  As discussed previously, petitioner's Notification of Revocation of Release merely recites that "on account of changed circumstances in your case[,] ICE has determined that there is a significant likelihood of removal in the reasonably foreseeable future in your case," and does not explain what circumstances changed and why petitioner's removal was now significantly likely in the reasonably foreseeable future. ECF No. 6 at 14.  Accordingly, the undersigned finds that respondents violated the notice requirement under § 241.13(i)(3).

### c.    Failure to Provide an Opportunity to Respond

When the government fails to include the reasons for revocation of release in the notice of revocation, it also deprives the noncitizen of the opportunity to respond to those reasons as required under 8 C.F.R. § 241.13(i)(3).  In Sarail A., the district court found respondents violated § 241.13(i)(3) because ICE's notice of revocation, which did not provide the reasons for revocation, deprived petitioner of the opportunity to meaningfully respond to those reasons. Sarail A., 803 F. Supp. 3d at 782.  The court explained that "without those reasons, the petitioner has no way to know what evidence or information is responsive."  Id. at 782.  Similarly, in Roble, the district court found respondents did not comply with § 241.13(i)(3) because they failed to provide petitioner with an opportunity to respond to the reasons for revocation.  Roble, 803 F. Supp. 3d at 772.  There the court explained that petitioner "cannot be expected to 'respond to the reasons for revocation stated in the notification' if the notification does not actually state any reasons for revocation."  Id.

21

Like the courts in <u>Sarail A.</u> and <u>Roble</u>, the undersigned finds that petitioner was deprived of an opportunity to respond to the reasons for revocation because the reasons were not provided in the Notice of Revocation of Release.  Respondents cannot reasonably claim petitioner had an opportunity to respond if he did not know what circumstances ICE believed had changed and why it was now significantly likely that he would be removed to Vietnam in the reasonably foreseeable future.  Moreover, as discussed below, providing petitioner an opportunity to be heard during review of his custody determination under § 241.4, does not constitute compliance with the opportunity to respond requirement under § 241.13(i)(3).  Accordingly, the undersigned finds respondents' violated § 241.13(i)(3) by failing to provide petitioner an opportunity to respond to the reasons for revocation stated in the notice of revocation.

d.    <u>Failure to Provide a Prompt Initial Informal Interview</u>

As noted above, 8 C.F.R. § 241.13(i)(3) requires a "prompt," after re-detention "initial informal interview" that affords the noncitizen an opportunity to respond to the reasons for revocation of release.  8 C.F.R. § 241.4(i)(3).  An interview weeks or months after revocation of release is not a "prompt" "initial informal interview."  <u>Bui v. Warden of the Otay Mesa Det. Facility</u>, No. 25-CV-2111 JES DEB, 2025 WL 2988356, at *4 (S.D. Cal. Oct. 23, 2025) (holding that an interview conducted four months after petitioner's re-detention does not satisfy the "prompt" informal interview requirement under the regulations); <u>M.S.L. v. Bostock</u>, No. 6:25-cv-1204 AA, 2025 WL 24300267, at *11 (D. Ore. Aug. 21, 2025) (holding that an informal interview provided twenty-seven days after re-detention "cannot reasonably be construed as a 'prompt' informal interview").  Furthermore, an interview that provides an opportunity to respond to reasons for continued detention under § 241.4 rather than reasons for revocation of release does not satisfy the interview requirement under § 241.13, nor does it cure a violation under § 241.13(i)(3).  <u>Bui</u>, 2025 WL 2988356, at *4 (finding that an interview to review the decision to continue to hold a noncitizen "does not suffice to meet the requirement for a 'prompt' informal interview required under Respondents' own regulations and does not work to cure this violation.").

/////

22

The petition alleges that ICE re-detained petitioner without affording him an "initial informal interview promptly after [his] return to custody." ECF No. 1 at 17. Respondents argue that "Petitioner received notices of his pending re-detention and custody re-evaluation and declined to participate in either, despite being given the opportunity. ECF No. 6 at 5. The court finds this argument disingenuous, because the record shows petitioner was not offered an interview until three months after his re-detention and that the offered interviews related to the reasons for petitioners continued detention and/or release and not an opportunity to contest the reasons for revocation of his prior release. Accordingly, the undersigned finds respondents' violated § 241.13(i)(3) by failing to provide petitioner a "prompt" "initial informal interview" that afforded him an opportunity to respond to the reasons for revocation of release.

### e.    Conclusion Regarding § 241.13(i)(3)

For the foregoing reasons, the undersigned finds respondents violated § 241.13(i)(3) in by (1) failing to provide petitioner adequate notice, (2) depriving petitioner of an opportunity to respond to the reasons for revocation of release, and (3) failing to provide petitioner with a "prompt" "initial informal interview."

### iv.    Conclusion: Violation of 8 C.F.R. § 241.13

As noted above, several courts have found that "where an immigration 'regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute . . . and [ICE] fails to adhere to it, the challenged [action] is invalid,'" Rombot, 296 F. Supp. 3d at 388 (quoting Waldron v. I.N.S., 17 F.3d 511, 518 (2d Cir. 1993)), and the petitioner's release must be ordered. Truong, 2025 WL 2988357, at *6 ("Courts have found that when ICE fails to follow its own regulations in revoking release, the detention is unlawful, and the petitioner's release must be ordered . . . This is so even when [ ] the Government has obtained a petitioner's travel documents back to his or her country of origin after their re-detainment.") (collecting cases); Morales Sanchez v. Bondi, ___ F. Supp. 3d ____, 2025 WL 3651899, at *4-6 (C.D. Cal. Dec. 5, 2025) (ICE's failure to follow regulations demonstrated detention was likely unlawful and entitled petitioner to release); Khachikian v. Casey, No. 25CV3737 GPC JLB, 2026 WL 63633, at *8 (S.D. Cal. Jan. 8, 2026) (ICE's violation of 8 C.F.R. § 241.13(i)(2) and

(3) entitled petitioner to habeas relief).  The undersigned is persuaded by these cases, which involved similar violations.  Accordingly, the undersigned recommends that the petition be granted alternatively on the grounds that respondents violated 8 C.F.R. § 241.13(i)(2) and § 241.13(i)(3).

C.  Ground Four: Petitioner's Revocation of Release Violates the Fifth Amendment
    Due Process Clause

Petitioner contends that the revocation of his release also violates the Fifth Amendment Due Process Clause because he did not receive adequate notice of the reasons for the revocation and an opportunity to respond.  ECF No. 1 at 17.  Despite the opportunity to do so, respondents have not responded to this claim.  See ECF No. 6.  For the reasons discussed below, the undersigned agrees with petitioner, finds this is an alternative basis for relief, and recommends the petition be granted and petitioner be immediately released.

Courts examine procedural due process claims in two steps: first they examine whether there exists a protected liberty interest under the Due Process Clause, and if so, they then determine the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution.  Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").  Several courts presented with a procedural due process claim based on the revocation of a noncitizen's release have found that when the government grants a noncitizen parole or supervised release, it creates a protected liberty interest subject to due process clause protection.  Guillermo M. R. v. Kaiser, 791 F. Supp. 3d 1021, 1029 (N.D. Cal. 2025) (noncitizen detained under 8 U.S.C. § 1231(a)(6)); Viengkhone S. v. Albarran, No. 1:25-cv-1505 KES HBK (HC), ___ F. Supp. 3d ____, 2025 WL 3521302, at *6-7 (E.D. Cal. Dec. 8, 2025) (same); Meneses v. Santacruz, No. 2:25-cv-11206 MCS PVC, ___ F. Supp. 3d ____, 2025 WL 3481771, at *2-3 (C.D. Cal. Dec. 2, 2025) (same).  These protections include notice and an opportunity to be heard regarding the revocation *prior* to re-detention.  Guillermo M. R., 791 F. Supp. 3d at 1038 (finding due process requires an opportunity to be heard *before* revocation of release) (citing Zinermon v. Burch, 494 U.S. 113, 127 (1990)); Viengkhone S., ___

24

F. Supp. 3d ____, 2025 WL 3521302 at *8 & n.7 (finding due process requires an opportunity to be heard *before* revocation of release) (citing Cleveland Bd. of Educ. V. Loudermill, 470 U.S. 532 (1985)) (collecting cases), Zinermon, 494 U.S. at 127, and Morrisey, 408 U.S. 471); see also Mathews v. Eldridge, 424 U.S. 319, 333 (1976) ("The 'right to be heard before being condemned to suffer grievous loss of any kind, even though it may not involve the stigma and hardships of a criminal conviction, is a principle basic to our society."), 348 ("The essence of due process is the requirement that 'a person in jeopardy of a serious loss [be given] notice of the case against him and the opportunity to meet it.").

Several courts have found that when ICE fails to follow its own regulations, such as the requirements under 8 C.F.R. § 241.13(i), ICE violates petitioner's due process rights under the Fifth Amendment, and petitioner must be released. See Xiong v. Noem, No. 0:26-CV-1399, 2026 WL 465220, at *1 (D. Minn. Feb. 18, 2026) (granting petition and ordering petitioner's immediate release because the government's failure to comply with the "bare-minimum procedural requirements" of notice of the reasons for revocation, prompt "initial informal interview," and "opportunity to respond to reasons for revocation stated in the notification" as required under § 241.13(i)(3) violates due process); Claudio A.A. v. Bondi, No. 26-cv-742 (KMM/LIB), 2026 WL 468232, at *7 (D. Minn. Feb. 12, 2026) (granting petition and ordering petitioner's immediate release because failure to provide "notice as required under § 241.13(i)(3) represents a violation of Petitioner's due process rights and another sufficient, independent basis upon which to grant habeas relief to petitioner); Nguyen, 2026 WL 72110, at *3 (granting petition and ordering petitioner's release because respondents "violated Petitioner's due process rights by not complying with its own rule under section 241.13(i)(3)"); Roble, 803 F. Supp. 3d at 772 (granting petition and ordering petitioner release because insufficient notice under § 241.13(i)(3) demonstrates a due process violation which entitled petitioner to release); Tran v. Noem, No. 3:25-cv-2391 BTM BLM, 2025 WL 3005347, at *2-4 (S.D. Cal. Oct. 27, 2025) (granting petition and ordering petitioner's release because respondents violated 8 C.F.R. § 241.13(i)(2) and (3)); see also Liu v. Casey, No. 26-cv-720 LL DEB, 2026 WL 482863, at *4 (S.D. Cal. Feb. 20, 2026) (finding "that because ICE did not follow its own regulations when it re-detained Petitioner, these

25

failures constitute a violation of Petitioner's due process rights and justifies his release from unlawful detention"). The court finds the analyses in those cases persuasive and adopts them by reference.

As discussed in extensive detail above, respondents failed to provide petitioner with any of the procedures required by 8 C.F.R. § 241.13(i)(3). They also failed to comply with the requirements of § 241.13(i)(2). The undersigned now finds further that by failing to comply with these regulations, respondents violated petitioner's due process rights. Accordingly, the undersigned recommends the petition be granted and that petitioner be ordered released immediately. To the extent relief is granted on the due process claim as it relates to revocation of release, the undersigned also recommends that respondents be enjoined and restrained from re-arresting and/or re-detaining petitioner absent *pre-deprivation* (1) notice and (2) a hearing before a neutral decisionmaker.

### D.  Grounds Two and Three: Third-Country Removal Procedures

The petition alleges that ICE's current procedures relating to the removal of persons to third countries violates due process and that the program is punitive in violation of due process. ECF No. 1 at 14-16.[4] For the reasons discussed below, the undersigned agrees.

#### i.  Statutory Framework

"When [a noncitizen] is found ineligible to remain in the United States, the process for selecting the country to which he will be removed is prescribed by 8 U.S.C. § 1231(b)(2)." Jama v. Immigr. & Customs Enf't, 543 U.S. 335, 337 (2005).

> The statute . . . provides four consecutive removal commands: (1) An alien shall be removed to the country of his choice (subparagraphs (A) to (C)), unless one of the conditions eliminating that command is satisfied; (2) otherwise he shall be removed to the country of which he is a citizen (subparagraph (D)), unless one of the conditions eliminating that command is satisfied; (3) otherwise he shall be removed to one of the countries with which he has a lesser connection (clauses (i) to (vi) of subparagraph (E)); or (4) if that is "impracticable, inadvisable, or impossible," he shall be removed to

---

[4] Petitioner also asserts that the third country removal procedures violate 8 U.S.C. § 1231, implementing regulations, the CAT, and the APA, and the program is punitive in violation of the Eighth Amendment. Because it is unnecessary to address these claims, the undersigned declines to do so.

26

"another country whose government will accept the alien into that country" (clause (vii) of subparagraph (E)).

Id. at 341.  Third-country removals represent the fourth command and involve deportation to countries that are not identified in a final removal order and to which the non-citizen has no connection.  See 8 U.S.C. § 1231(b)(2)(E)(vii).  While DHS has the authority to remove a noncitizen to a country not identified in the final removal order, there is no statute or regulation providing a specific procedure to effectuate a third country removal.  See Aden v. Nielsen, 409 F. Supp. 3d 998, 1009 (W.D. Wash. 2019); see also A.A.M. v. Andrews, No. 1:25-cv-1514 DC DMC, ___ F. Supp. 3d ____, 2025 WL 3485219, at *1-2 (E.D. Cal. Dec. 4, 2025).[5]

ii.    Fifth Amendment Due Process Clause

1.    Overview

The petition alleges that ICE's current third-country removal procedures provide "that ICE may deport [a] person without any procedures for notice or an opportunity to be heard if the State Department confirms that it has received diplomatic assurances that individuals will not be persecuted or tortured."  ECF No. 1 at 3 (citing Y.T.D. v. An drews, No. 1:25-cv-1100 JLT SKO, 2025 WL 2675760, at *9 (E.D. Cal. Sept. 18, 2025)).  Where no diplomatic assurances are received, officers are instructed to generally wait at least twenty-four hours after serving a notice of removal before effectuating removal but that in exigent circumstances a removal order can be effectuated in as little as six hours after notice if the individual "is provided reasonable means and opportunity to speak with an attorney prior to removal."  Id. (citing Y.T.D., 2025 WL 2675760, at *9-10).  Officers are "instruct[ed] *not* to ask whether the individual is afraid of removal to that country" and removal is allowed to proceed so long as "the noncitizen 'does not affirmatively state a fear of persecution or torture if removed to the country of removal listed on the Notice of Removal within 24 hours.'"  Id. (citing Y.T.D., 2025 WL 2675760, at *10).  The petition also

/////

---

[5]  In granting a temporary restraining order in A.A.M. v. Andrews, the district judge engaged in a thorough analysis of the statutes and policies governing third country removals.  A.A.M., 2025 WL 3485219, at *1-2.  The undersigned hereby incorporates that analysis by reference in this order.

27

alleges that "Respondents' third-country removal program is punitive in nature and execution." ECF No. 1 at 4-6, 15-16.

Respondents do not address these issues or challenge petitioner's representations of ICE's current third-country removal procedures in their response. ECF No. 6. Respondents also do not challenge petitioner's allegations that their third-country removal policy is punitive in nature and has resulted in noncitizens being removed to countries to which they have no ties and where they have been imprisoned, and that in at least one case a noncitizen was sent to another country where he would likely be tortured. See ECF No. 1 at 4-5. Instead, in a footnote, respondents argue that these grounds are not factually relevant because petitioner was ordered removed to Vietnam and "ERO is actively procuring travel documents to remove petitioner to Vietnam," and that as a result, petitioner should not be granted any relief under grounds two and three. ECF No. 6 at 5 n.2.

### 2.  Legal Standard

"It is well established that the Fifth Amendment entitles [noncitizens] to due process of law' in the context of removal proceedings." Trump v. J. G. G., 604 U.S. 670, 673 (2025) (per curiam) (quoting Reno v. Flores, 507 U.S. 292, 306 (1993)). "Failing to notify individuals who are subject to deportation that they have the right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported violates both INS regulations and the constitutional right to due process." Andriasian v. I.N.S., 180 F.3d 1033, 1041 (9th Cir. 1999) (citation omitted) (addition of alternate country for removal at end of asylum hearing after close of evidence violated due process); Sadychov v. Holder, 565 F. App'x 648, 651 (9th Cir. 2014) (if designated country of removal is changed, "the agency must provide [noncitizen] with notice and an opportunity to reopen his case for full adjudication of his claim of withholding of removal" from newly designated country (citation omitted)); Najjar v. Lynch, 630 F. App'x 724 (9th Cir. 2016) ("In the context of country of removal designations, last minute orders of removal to a country may violate due process if an immigrant was not provided an opportunity to address his fear of persecution in that country.").

/////

### 3. Analysis

#### a. ICE's Third-Country Removal Procedures Violate Due Process

Joining numerous other courts, the undersigned finds that ICE's policy for third-country removals—which provides little to no notice of the country to which a noncitizen is to be removed and no meaningful opportunity to raise a fear-based claim—is incompatible with Ninth Circuit law and violates due process.  See Vishal, __ F. Supp. 3d __, 2025 WL 3511815, at *6 (noting "[m]ultiple courts have found the government's third country removal policy violates due process and is contrary to Ninth Circuit precedent" and concurring (citing cases)); Giebashvili v. Noem, No. 25-cv-3432 BJC VET, 2026 WL 114422, at *3 (S.D. Cal. Jan. 15, 2026) (same) (collecting cases); Nguyen, 796 F. Supp. 3d at 728 ("It would be impossible to comply both with Ninth Circuit precedent and the policy." (citing Andriasian, 180 F.3d at 1041; Aden v. Nielsen, 409 F. Supp. 3d 998, 1009 (W.D. Wash. 2019)); Gomez v. Mattos, No. 2:25-cv-CV-0975 GMN BNW, ___F. Supp. 3d ____, 2025 WL 3101994, at *6 (D. Nev. Nov. 6, 2025) ("Petitioner has a due process right to receive meaningful notice and opportunity to present a fear-based claim to an immigration judge before DHS deports him to a third country.").  The undersigned further finds that "the risk of removal without due process itself constitutes a concrete injury," Daneshfar v. Facility Adm'r, No. C25-1708 DGE MLP, 2025 WL 4037745, at *3 (W.D. Wash. Dec. 16, 2025); Esmail v. Noem, No. 2:25-cv-8325 WLH RAO, 2025 WL 3030589, at *5 (C.D. Cal. Sept. 26, 2025), and that actual removal without notice or meaningful process is an injury that cannot be remedied once removal occurs, see Louangmilith v. Noem, No. 25-CV-2502 JES MSB, ___ F. Supp. 3d ____, 2025 WL 2881578, at *4 (S.D. Cal. Oct. 9, 2025) (once a noncitizen is removed without notice or opportunity to be heard "it will be too late for the individuals to meaningfully challenge the removal").  Accordingly, the undersigned rejects respondents' argument that these claims are "without merit and borderline frivolous in this case."  See ECF No. 6 at 5 n.2.

Moreover, the undersigned notes that a district court in the First Circuit has recently ruled in the summary judgment context that the third-country removal policy at issue is unlawful.

29

D.V.D. v. United States Dep't of Homeland Sec., No. CV 25-10676 BEM (D. Mass.) is a class-action lawsuit involving a class of

> [a]ll individuals who have a final removal order issued in proceedings under Section 240, 241(a)(5), or 238(b) of the [Immigration and Nationality Act ("INA")] (including withholding-only proceedings) whom DHS has deported or will deport on or after February 18, 2025, to a country (a) not previously designated as the country or alternative country of removal, and (b) not identified in writing in the prior proceedings as a country to which the individual would be removed.

D.V.D., ___ F. Supp. 3d ____, 2026 WL 521557, at *3, *44 (D. Mass. Feb. 25, 2206).  The court found that "class members have the right to meaningful notice before removal to any third country" and "to a meaningful opportunity to raise a country-specific claim against removal before removal to any third country."  Id.  The third-country removal policy was set aside as unlawful.  Id.[6]  That judgement, however, is stayed until March 12, 2026, or "until the First Circuit rules on any motion for administrative stay or stay pending appeal, whichever occurs first."  Id.  An appeal is pending and a motion to stay pending appeal is forthcoming.  See D.V.D. v. United States Dep't of Homeland Sec., No. 26-1212, 1st Cir., February 28, 2026 (DHS filed a motion a motion for leave to file an oversized motion for emergency stay pending appeal).

     If the judgment is *not* stayed pending appeal, the ruling in D.V.D. likely resolves petitioner's third-country removal claims regarding due process and statutory violations because he appears to be a class member.  However in the interim and in the event he does not qualify as a class member, the undersign finds the district judge's comprehensive analysis regarding due process and the third-country removal policy in D.V.D. persuasive and adopts it by reference.  See D.V.D., ___ F. Supp. 3d ____, 2026 WL 521557 at *26-40.

/////

/////

---

[6] The district court in D.V.D. also concluded that "the third-country removal policy, as embodied in the March Guidance, is contrary to [8 U.S.C. §] 1231(b)(2)-(3)."  D.V.D., ___ F. Supp. 3d ____, 2026 WL 521557 at *23. As noted before, the undersigned declines to address petitioner's other claims, which include a claim that the third-country removal policy violates 8 U.S.C. § 1231.  Accordingly, the undersign need not say more regarding this issue.

For the foregoing reasons, the undersigned finds petitioner is entitled to relief on this ground and respondents should be enjoined from removing him to a third country without first providing adequate notice and an opportunity to raise a fear of removal.

b. ICE's Third-Country Removal Policy is Punitive

In arguing that the government's policy is punitive and therefore unconstitutional, petitioner relies on Wong Wing v. United States, 163 U.S. 228 (1896). ECF No. 1 at 12-13, 15. In Wong Wing, the United States Supreme Court "held unconstitutional a statute that imposed a year of hard labor upon aliens subject to a final deportation order." Zadvydas, 533 U.S. at 694.

> The Court held that while "it is within the constitutional power of congress" to deport those unlawfully present in the United States, Congress could not add to the sanction of expulsion the "punishment by imprisonment at hard labor . . . without a trial by jury." [Wong Wing, 163 U.S.] at 235, 16 S. Ct. 977. The Court explained that there is a fundamental difference between "detention or temporary confinement" while awaiting deportation and "imprisonment at hard labor." Id. at 236, 16 S. Ct. 977. The latter, the Court concluded, was an "infamous punishment" that could only be imposed following a criminal trial with the full protection of the Fifth and Sixth Amendments. Id. at 237-38, 16 S. Ct. 977.

Nguyen, 796 F. Supp. 3d at 733. The Court concluded "that all persons within the territory of the United States are entitled to the protection guaranteed by [the Fifth and Sixth] amendments, and that even [noncitizens] shall not be held to answer for a capital or other infamous crime, unless on a presentment or indictment of a grand jury, nor be deprived of life, liberty, or property without due process of law." Wong Wing, 163 U.S. at 238.

Based on petitioner's uncontested allegations,[7] the undersigned finds that, to the extent it deliberately seeks to remove noncitizens to countries where they will be imprisoned upon arrival, the government's third-country removal policy is punitive and violates due process. See Baltodano v. Bondi, No. C25-1958 RSL, 2025 WL 3484769, at *7-10 (W.D. Wash. Dec. 4, 2025) ("the Government's practice of third-country removal paired with imprisonment is intended to be

---

[7] Respondents have not addressed petitioner's allegations that the third-country removal policy is punitive because the government is deliberately removing individuals to countries where they will be imprisoned and government official have made statement indicating that third-country removals are intended as punishment. See ECF No. 1 at 4-6, 15-16; ECF No. 6. Rule 8 of the Federal Rules of Civil Procedure deems such silence an admission. See Fed. R. Civ. P. 8(b)(6) ("An allegation . . . is admitted if a responsive pleading is required and the allegation is not denied.").

31

punitive and thus violates due process under Wong Wing, 163 U.S. 228 at 236-38 (1896), and Zadvydas, 533 U.S. 678 at 693-94 (2001).").

CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1.  The petition for writ of habeas corpus (ECF No. 1) be GRANTED as to petitioner's Fifth Amendment due process claim regarding prolonged detention, regulatory and Fifth Amendment due process claims regarding revocation of release, and Fifth Amendment due process claim regarding the government's third-country removal program.

2.  Petitioner Vu Quoc Pham be IMMEDIATELY RELEASED from ICE custody under the same conditions of release to which he was subject prior to his July 14, 2205, re-detention.

3.  Respondent be ordered to provide petitioner with a copy of the release order to provide petitioner with a copy of the release order at or near the time of release.  If respondents have custody of petitioner's documents (e.g., identification, passport, work permit, Social Security card, etc.), respondents be ordered to return those to petitioner at the time of release.

4.  Respondents be PERMANENTLY ENJOINED AND RESTRAINED from seeking to revoke petitioner's supervision unless and until they comply with all procedures set forth in 8 C.F.R. § 241.13(i), any other applicable statutes and regulations, and the requirements of due process.

5.  Respondents be PERMANENTLY ENJOINED AND RESTRAINED from removing petitioner to a third country unless respondents adhere to the following procedures:

   a.  Provide petitioner a meaningful opportunity and a minimum of ten days to raise a fear-based claim for protection prior to removal;

   b.  If petitioner demonstrates reasonable fear of removal to the third country, respondents must move to reopen petitioner's removal proceedings; and

   c.  If petitioner is not found to have demonstrated a reasonable fear of removal to the third country, respondents must provide a meaningful opportunity and a minimum of fifteen days for petitioner to seek reopening of his immigration proceedings.

/////

32

6.    Respondents be PERMANENTLY ENJOINED AND RESTRAINED from removing petitioner to any country where he is likely to face imprisonment upon arrival.

7.    Within **three days** of the adoption of these findings and recommendations, respondent be ordered to file a notice of compliance confirming petitioner's release and that the conditions of his supervision are the same as those to which he was subject prior to his July 14, 2025 re-detention.

8.    The Clerk of the Court be directed to enter judgment in favor of petitioner and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **seven days** of the date of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  March 10, 2026.

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

33